BY THE REPORTER.— See Rev. Stat. c. 117, § 1, 37.

---

WILLIAM MARR *versus* JOSEPH HOBSON *&* al.

By the provisions of the Rev. St. c. 121, if a petitioner for partition choose to take an issue on the question of the respondent's interest, he may do so, and on its being determined in his favor, he is placed as he would have been, if the respondent had not appeared.

But if the respondent shows himself to be interested, and so authorized to contest the claim to partition, the petitioner must prevail by the strength of his own title, and not by the weakness of the other party.

By a conveyance of " several tracts of land in the County of Cumberland, bounded as follows" describing several parcels and concluding with, " and it is hereby to be understood, that I convey all the real estate I own in the County of Cumberland"— all the real estate of the grantor in that County passes, although not included in any of the descriptions of particular tracts.

A description of the premises as " a certain tract of land situated in S. as will appear by deed dated July 3, 1833, and recorded in the Cumberland registry of deeds, book 135, page 292," without naming the parties to the deed referred to, is sufficient to adopt the description, and to convey the land described in the deed to which reference is thus made.

If a deed, which by its original terms contained a condition by the non-performance of which it had become void, be altered by the destruction of such condition, and then recorded in its altered form, the deed of the grantee can give no title to a third person.

If an administrator's deed of land, sold under a license for the payment of debts of the intestate, be not delivered until after one year has elapsed from the time of the license, such deed is merely void, and will give no seizin to the grantee therein named.

THIS was a petition for partition, entered at the June Term of the District Court, 1840, against persons unknown. The respondents entered their appearance in that Court, after the Revised Statutes went into operation, and it was brought into this Court by demurrer. No question was raised, whether,

as the law then was, an appeal would lie. The respondents claimed to be sole seized of the premises ; and the pleadings are referred to in the report but are not found in the copies. All the material portions of the title deeds under which the parties, respectively, claimed are found in the opinion of the court. The report of the trial before SHEPLEY J. states, that testimony was introduced by the respondents, tending to show, that the deed from the administratrix of the estate of William Pierce to the petitioner was not delivered within a year from the time of the license to sell real estate ; and also, that the deed from A. L. Came to Dyer & Pierce was originally a conditional deed, and that since its execution and delivery, and before it was recorded, the condition, which had been attached by wafers, had been taken off ; and that the import of the condition, thus taken off, was, that the deed should be void upon a certain contingency, which had happened. No possession or occupancy was proved by either party.

The presiding Judge instructed the jury, that the petitioner must show a seizin in himself, and that if he failed to do this he could not prevail, whether the respondents proved a seizin in themselves or not. And also instructed them, that the deeds offered might, for the purposes of that trial, be considered as covering the premises in question, as claimed by the parties respectively ; and that, if they were satisfied that the deed of the petitioner from the administratrix of Pierce was not delivered within a year from the date of her license, or that the deed from A. L. Came to Dyer & Pierce had been mutilated, as contended for by the respondents, they should find for the respondents — otherwise, they should find for the petitioner.

The verdict was for the respondents, but was to be set aside or affirmed, as the Court, upon a consideration of the facts and the law, should determine to be right.

*Howard & Osgood,* for the petitioner, remarked that both parties claimed under A. L. Came, the petitioner being entitled to an undivided moiety under the earliest deed from Came to Dyer and Pierce, dated August 6, 1833, and under the deed

of the administratrix of Pierce to the petitioner. This makes out a *prima facie* if not an actual title in him, and shows that he had the legal seizin, and the right of entry. No stranger to the title has a right to call in question the validity of the deed from Came to Dyer and Pierce, or the regularity of the proceedings of Pierce's administratrix, or her deed to the petitioner, or its delivery. Upon this proof his right to partition is maintained against the respondents, who prove neither title, interest, possession nor occupancy in themselves. *Knox* v. *Jenks,* 7 Mass. R. 492; *Gilman* v. *Stetson,* 16 Maine R. 127; *Baylies* v. *Bussey,* 5 Greenl. 157; *Welles* v. *Prince,* 9 Mass. R. 508; *Barnard* v. *Pope,* 14 Mass. R. 434. The case last cited explains that *Bonner* v. *Pro. Ken. Pur.* 7 Mass. R. 475. Any person interested, in possession, or having a right of entry, can maintain the process for partition. Rev. St. c. 121, § 2; *Call* v. *Barker,* 3 Fairf. 320.

The question here presented is, whether the respondents have any interest in the premises, and not whether the petitioner has a title. Under the Rev. Stat. c. 121, § 11, 12, 13, which must govern, the respondents have no right to question the interest or right of the petitioner, until they establish some title or interest in themselves, although third persons may not be bound by such partition. § 33.

The respondents have no interest or estate in the premises. Here the deeds A. L. Came to M. R. Came, M. R. Came to Jabez Hobson, and Jabez Hobson to the respondents, were particularly examined, and the conclusion drawn, that no one of them covered the premises in controversy. And the case shows, they were not in possession.

From the view taken, it follows that the instruction of the Judge to the jury, as to the construction of the deeds of the respondents, was erroneous.

The instruction that the petitioner must show a seizin in himself, and that if he failed to do this, he could not recover, whether the respondents proved a seizin in themselves or not, was also erroneous. It enables the respondents, without title, interest, possession, or occupancy, to prevent our having par-

tition. However correct before the Revised Statutes went into operation, the instruction is not so under those statutes, and under these pleadings, made in conformity thereto. The burthen of proof is on the respondents, to show a title or interest in themselves, before they can call on us to show our title.

*Deblois* and *Swasey*, for the respondents, contended that where the petitioner alleges seizin in himself, as in this case, and respondents come in, and plead sole seizin, and traverse the seizin of the petitioner, as we do, the affirmative is on the petitioner to show his interest in the estate. The same principle applies here, as in other cases, the claimant must make out his case, as he has set it forth. The petitioner cannot have land set off to him, unless he shows an interest in himself to be set off. *Nason* v. *Willard*, 2 Mass. R. 478; *Bonner* v. *Pro. Ken. Pur.* 7 Mass. R. 475; 6 Dane, 480; *Mussey* v. *Sanborn*, 15 Mass. R. 155; *Paine* v. *Ward*, 4 Pick. 246; *Swett* v. *Bussey*, 7 Mass. R. 503; *Gilman* v. *Stetson*, 4 Shepl. 124; *Bussey* v. *Grant*, 7 Shepl. 281.

The law on this subject is not altered by the Revised Statutes. No new principle of evidence is introduced. c. 121, § 1 and 2, gives the right to have partition made only to such as have title and are in fact tenants in common. Sections 11, 12 and 13, apply only to cases where the petitioner is in fact a tenant in common of the land, and merely provides, that an entire stranger shall not interfere in the manner of making the partition. The statute does not authorize the setting off of land to one who has no share in it.

The petitioner has entirely failed to show a title sufficient to enable him to recover.

The jury have found, that the deed of the administratrix was not delivered within the year from the time of the license; and such deed is entirely void, and gives neither title nor seizin. St. 1821, c. 52, § 12; *Willard* v. *Nason*, 5 Mass. R. 240; *Wellman* v. *Lawrence*, 15 Mass. R. 326; *Macy* v. *Raymond*, 9 Pick. 285.

Nor had William Pierce, the intestate, any title to the premises, which could be conveyed by his administratrix. The

jury have found that the deed to the intestate was altered in a material part, and that if it had remained unaltered, it would have become inoperative by reason of the non-performance of the condition. Shep. Touchst. 69.

The petitioners acquired an indefeasible title to the premises under the deeds A. L. Came to M. R. Came, M. R. Came to Jabez Hobson, and Jabez Hobson to the respondents. Each of these deeds covered the premises. *Keith* v. *Reynolds*, 3 Greenl. 393 ; *Worthington* v. *Hylyer*, 4 Mass. R. 196 ; *Ward* v. *Bartholomew*, 6 Pick. 409 ; *Child* v. *Fickett*, 4 Greenl. 471 ; *Jackson* v. *Clark*, 7 Johns. R. 217 ; *Jackson* v. *Blodget*, 16 Johns. R. 172 ; *Adams* v. *Cuddy*, 13 Pick. 460 ; *Foss* v. *Crisp*, 20 Pick. 121 ; 1 Greenl. 219 ; 6 Pick. 460 ; 15 Pick. 23 ; 20 Maine R. 61.

The opinion of the Court was afterwards drawn up by

TENNEY J. — The petitioner claims to be seized of a moiety of the land described in the petition in common and undivided with persons unknown. The respondents come in and file their brief statement, alleging therein, that they are sole seized. The petitioner files a counter brief statement denying to the respondents any right to controvert or put in issue his seizin, because they have no estate or interest in the lands ; and he relies upon c. 121, § 11, 12 and 13, of the Revised Statutes.

The respondents insist that the Revised Statutes have introduced no alteration, and that the petitioner must prevail or not, as he shall show his own title to be. Several new provisions have been introduced into the Revised Statutes on the subject of partition. After providing in section 4, that the cotenants, if known to the petitioner, shall be named in the petition, and in section 11, that " any person interested in the premises of which partition is prayed may appear and allege jointly with the other respondents or separately any matter tending to show, that the petitioner ought not to have partition as prayed for in whole or in part, and this may be done in the form of a brief statement ;" section 12 provides, that, " to such brief state-

ment the petitioner may reply in the form of a counter brief statement, that the person thus answering as a respondent has no interest in the premises; and may also reply any other matter to show the insufficiency of the respondent's brief statement;" and section 13, farther provides, that "if it shall appear, that the respondent has no estate or interest in the lands, the objections to the partition shall be no farther a matter of inquiry, and the petitioner shall recover of the respondent the costs attending the trial."

The two last sections are new, and were manifestly intended to prevent the interference of strangers, who could have no interest whatever in the subject. If the petitioner chooses to take an issue on the question of the respondent's interest, he may do so, and on its being determined in his favor, he is placed as he would have been, if the respondent had not appeared.

Before then the petitioner's seizin can be inquired into, under the first issue as it is presented, we are to see whether the respondents have any interest in the lands. Both parties claim under Abraham L. Came. The earliest title is a warrantee deed from Robert P. Marr to him, dated July 3, 1833. Came conveyed with covenants of warranty to William Pierce and Isaac Dyer by deed of Aug. 6, 1836; but in the succeeding November, Dyer relinquished all his right to said Came. The title was then in Came and Pierce or the heirs of Pierce, and so continued till June 5, 1837, when Abraham L. Came conveyed to Mark R. Came with covenants of seizin and warranty, the whole of several parcels of real estate, and among them, "one other tract, or mill privilege, situated at Steep Falls in said Standish, being the same property, I bought of Robert P. Marr, as appears by his deed, bearing date July 3, 1833," and in the same deed is added, "and it is hereby understood, that I now convey all the real estate, I own in the County of Cumberland."

It is through this deed of June 5, 1837, that the respondents claim to have an interest in the lands in controversy; and the deed therein referred to, of July 3, 1833, describes the same

land embraced in this petition. From the language used in the deed of June 5, 1837, it is quite manifest, that the grantor did not profess to give an accurate and minute description of the premises intended to be conveyed, but by the comprehensive terms used, and the references made, it probably would not be difficult to ascertain the situation of the estate. Without however recurring to other matter, than that contained in the deed itself, the land could not all be found and its limits correctly defined. The estate at Bonny Eagle Falls is not described. Then follows, with nothing to indicate the precise location, " three other tracts of land in Standish, with the buildings thereon." " Also one other tract or mill privilege, situated at Steep Falls in said Standish, being the same property I bought of Robert P. Marr, as appears by his deed to me, bearing date July 3, 1833." By the reference, the last named deed becomes a material part of the description of the one now in question, and is to be treated in the same manner as though its contents were copied. This deed of July 3, 1833, covers three other parcels as well as that in dispute.

It is contended by the counsel for the petitioner, that it was not the intention of Abraham L. Came to convey to Mark R. Came all the land described in the deed from Robert P. Marr to him ; that he describes it as " one other tract" — " a mill privilege," — " at Steep Falls." Perhaps the first clause was not the most precise use of language, if more than one distinct parcel was intended to be embraced ; but a farm is often described as a *tract* of land, where it may be composed of more than one piece, separated by roads, and perhaps by the lands of strangers. The terms used do not necessarily denote a mill privilege, for the language is in the alternative "a tract of land *or* a mill privilege," which is a proper mode of expression, if there was an uncertainty in the mind of the grantor, whether it was one or the other, as much as if he intended a twofold description of the same parcel, the idea of which was existing in his mind. " Steep Falls" may mean, without any violence to the language used, the neighborhood or village, if

there be a village, situated near Steep Falls. It would be an usual mode of expression to say, that the land was at Steep Falls, if it were in the vicinity of Steep Falls.

Again it is contended that the final clause in the description was not intended to enlarge it, but has reference only to the preceding language in the deed. It is a familiar principle, that effect must be given to every word in a deed, if possible, and that the language must be construed most against the grantor. We think the last sentence has important meaning. If it had been omitted, some parcels of the land referred to could not be found with any degree of certainty ; and we think this clause was for the purpose of supplying the deficiency in the previous description of the several parcels intended to be conveyed. Without these comprehensive terms, how could " three other tracts of land in Standish" be embraced, where there is nothing to serve as a guide to them in the deed, especially, if there be other real estate not conveyed, as is contended there is ? From the whole deed of Abraham L. Came to Mark R. Came, it was the manifest expectation of the parties, that resort to other means of determining the situation and boundaries of the land embraced would be necessary, and we entertain no doubt, that it was the intention of the parties, that all the land described in the deed referred to should be conveyed.

Was the same land conveyed to Jabez Hobson by Mark R. Came's deed of Jan. 19, 1839 ? The terms are here, as in the other deed, " a certain tract of land situated in Standish as will appear by deed dated July 3, 1833, and recorded in the Cumberland Registry of Deeds, Book 135, page 292 ;" and in the same deed another parcel is referred to, as being in a deed dated Nov. 7, 1836, and recorded Book 157, page 87.

In these references the names of the parties to the deeds are not mentioned ; and as the one recorded in Book 135, page 292 contains several distinct tracts, it would be impossible to determine which was intended, if all were not included ; and we cannot believe that this deed is so uncertain, that it

should be treated as void. The description in this deed is in the same terms used in the deed from Marr to Abraham L. Came. The deed also from Jabez Hobson to the respondents, after describing other estate, embraces another piece of land in Standish, and being so much of that conveyed to the grantor by Mark R. Came's deed, dated Jan. 19, 1839, as is recorded in Book 135, page 292. The description given in the deed from Robert P. Marr to Abraham L. Came must apply to the two deeds to the respondents and to their grantor with equal force and will pass the land in controversy.

The respondents having shown themselves interested in the premises, and so authorized to contest the petitioner's right to partition, we now consider the remaining question. Has he shown such a seizin as to entitle him to hold in severalty the interest described in his petition? He must prevail by the strength of his own title, and not by the weakness of that of the other party. He claims under a deed from Abraham L. Came, duly executed and recorded, dated Aug. 6, 1836, to William Pierce and Isaac Dyer, their heirs and assigns, and a deed given by the administratrix of the estate of said Pierce, purporting to be under a license from the Probate Court. Although Abraham L. Came, after he conveyed to Pierce and Dyer, executed and delivered a deed of the same land, from which last the respondents claim to derive their title, yet it was of a later date and could not repeal a former conveyance, which was still operative. Both the deeds under which the petitioner claims are attempted to be impeached in their effect, the first on the ground that it had been altered in a material particular, and the last, that it was not delivered till after a year had elapsed from the time, that license to sell was obtained. From the instruction of the Judge, and the verdict of the jury one or both these facts were found. If the deed from Abraham L. Came was essentially mutilated, it could have no effect upon the issue. But from the case, by its original terms, it had become void, which would well account for the grantor's subsequent conveyance.

The deed of the administratrix could pass no title after the

expiration of a year from the time license was obtained. The delivery was essential to make the sale perfect. St. of 1821, c. 52, § 12; *Macy* v. *Raymond & al.* 9 Pick. 285.

No attempt having been made to show that the petitioner ever occupied the premises, he could have no seizin, excepting by virtue of the deed from the administratrix, which failed equally to give seizin as it did title. Lands on the death of the owner pass to the devisee or heirs, who are entitled to possession. The executor or administrator has in no case, *virtute officii,* a right to the possession of the deceased's lands. If they are wanted to pay debts, they can be sold under license; the right to sell being a naked power, which cannot be defeated by alienation or disseizin. And the purchaser of lands lawfully sold by an executor or administrator may enter and maintain a real action on his own seizin by virtue of the conveyance and his entry. *Willard* v. *Nason,* Adm'x. in error, 5 Mass. R. 240. It follows from these principles that the deed from the administratrix, even if the intestate had title, could transmit nothing whatever.

*Judgment on the verdict.*